UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES SMITH, a handicapped adult and JA.S., a minor; all by and through their mother and guardian TERESA SMITH,<br><br>　　　　　Plaintiffs<br><br>　v.<br><br>CITY OF STOCKTON; ERIC JONES, individually and in his capacity as Chief of the Stockton Police Department; HOUSTON SENSABAUGH, individually; TRAVIS WEBER, individually; T. REES, individually; BENJAMIN RATZLAFF, individually; KENNY HOANG MINH PHAM, individually; and DOES 1 to 100.<br><br>　　　　　Defendants. | Case No.  2:15-CV-02511-MCE-AC<br><br>**ORDER ON MOTION FOR APPROVAL OF PROPOSED SETTLEMENTS OF THE CLAIMS OF DISABLED ADULT JAMES SMITH AND MINOR JA.S.**<br><br>**[U.S.D.C., E.D. Cal. Local Rule 202]**<br><br>**Date:**　　May 5, 2016<br>**Time:**　　2:00 p.m.<br>**Judge:**　　Hon. Morrison C. England, Jr.<br>**Courtroom: 7** |

　　　The hearing on Plaintiff's Motion for Approval of Proposed Settlements of the Claims of Disabled Adult James Smith and Minor JA.S. came on regularly for hearing at the above noted date and time.  Plaintiffs were represented by Quinton B. Cutlip, Esq., of the Dolan Law Firm.  The motion was unopposed.  Having considered the papers filed in support and the arguments of counsel, the Court finds good cause to issue the following order:

///

## BACKGROUND

Plaintiff James Smith is a developmentally delayed adult, who is said to have an IQ of approximately 40 and the mental capacity of a four or five year old. He was engaged in horseplay with a younger boy when an officer from the Stockton Police Department drove up. It is alleged that there were no reasonable grounds for the officer to detain James, but the officer followed him, tackled him, and restrained him. It is also alleged that the officer sicced his police dog upon James. James was arrested and taken to jail. He was initially charged with violating California Penal Code 48(a) – resisting or delaying an officer, but all charges were dropped, apparently because of James' lack of mental capacity.

James suffered two broken teeth and extensive bite marks on his arms, legs, and torso. His teeth have been repaired and the bite marks have healed, but scarred. James has also demonstrated emotional injuries as a result of the incident that include a deep fear of the Stockton police. According to his mother, he runs or flees when he sees members of the Stockton Police Department. James' minor sister JA.S., who has autism, was present while James was being arrested and suffered bystander emotional distress. She was neither physically injured nor arrested.

## STANDARD

District courts have a special duty, derived from Federal Rule of Civil Procedure 17(c), to safeguard the interests of litigants who are minors.... In the context of proposed settlements in suits involving minor plaintiffs, this special duty requires a district court to "conduct its own inquiry to determine whether the settlement serves the best interests of the minor." Dacanay v. Mendoza, 573 F.2d 1075, 1080 (9th Cir.1978); see also Robidoux v. Rosengren, 638 F.3d 1177, 1181 (9th Cir.2011); E.D. Cal. Local R. 202(b) ("No claim by or against a minor or incompetent person may be settled or compromised absent an order by the Court approving the settlement or compromise.").

As the Ninth Circuit explained in Robidoux, district courts should "limit the scope of their review to the question whether the net amount distributed to each minor plaintiff in the settlement is fair and reasonable, in light of the facts of the case, the minor's specific claim, and recovery in similar cases." 638 F.3d 1181–82. This determination is made "without regard to the proportion of

the total settlement value designated for ... plaintiff's counsel ...." Id. at 1182.

## ANALYSIS

### A.   FAIR AND REASONABLE

Plaintiff's counsel investigated the case, met and interviewed witnesses, tracked the criminal prosecution, drafted and served state government tort claims, served a settlement demand, and ultimately filed suit in this court.  The suit alleged that James Smith had been subjected to an unlawful search, seizure, and arrest and had also been subjected to the use of excessive force by the Stockton police officers, in their individual capacities.  (The City of Stockton was in Chapter 9 bankruptcy proceedings at the time of the incident.)  James Smith's claims were based upon violations of the Fourth Amendment to the United States Constitution and upon various state tort claims.  The suit also alleged that JA.S. suffered emotional distress as a bystander who witnessed her brother being injured.

The parties agreed to mediate the case with the assistance of the Hon. Raul Ramirez (ret.), who was formerly a Judge of this court.  The mediation was successful.  Pending approval by the Stockton City Council and this Court, the parties agreed that the Defendants would pay a total of $ 307,500.00 to the Plaintiffs in exchange for a complete waiver of all claims.  The settlement is to be divided $ 280,000.00 to James Smith, $ 20,000.00 to JA.S., and $ 7,500.00 is to be used to defray costs of creating and maintaining a special needs trust for James Smith.  The Stockton City Council has approved the settlement.  Plaintiffs now seek approval from this Court.  (Plaintiffs also made a separate petition to establish a special needs trust for James Smith, which is being addressed in a separate order by this Court.)

The proceeds of the settlement are to be paid as follows:

///

///

///

///

///

**James Smith**

|  |  |  |
|---|---|---|
| Gross Settlement | : | $ 280,000.00 |
| Less Attorney Fees | : | [$ 112,000.00] |
| Less Litigation Costs  (93%) | : | [$     1,674.73] |
| Less Medi-Cal Reimbursement | : | [$        603.39] |
| ***Net to James Smith*** | : | ***$ 165,721.88*** |
| Portion of Settlement to Set Up Special Needs Trust | : | $ 7,500.00 |

**JA.S.**

|  |  |  |
|---|---|---|
| Gross Settlement | : | $ 20,000.00 |
| Less Attorney Fees (40%) | : | [$   8,000.00] |
| Less Litigation Costs  (7%) | : | [$        126.06] |
| ***Net to JA.S.*** | : | ***$  11,873.94*** |

After reviewing the facts of the case and Plaintiffs' specific claims, the Court finds that the proposed settlement is fair and reasonable. Under Robidoux, this Court must also consider "recovery in similar cases."  Of the three cases Plaintiffs suggested, only Map v. Bakersfield, 2009 WL 179771 (E.D. Cal. 2009) involved an attack by a police dog.  In Map, a police dog attacked and bit a 14 year old boy on the head and caused wounds to his face and ear.  The Plaintiff in *Map* had $ 12,629.51 in medical expenses and the court approved a settlement of $95,000.00 that resulted in a net recovery of $ 56,992.71 to the minor.  The second case Plaintiffs cited (Hagan v. California Forensic Medical Group, 2013 WL 461501 (E.D. Cal. 2013)), is not particularly on point, but it demonstrates that settlements in civil rights cases involving minors who suffered grave losses can justifiably be approved for relatively small sums.  In Hagen, a minor's wrongful death claims for the loss of his incarcerated father were settled for $15,000.00. The third case Plaintiffs cited (Baez v. City of New York, 2010 WL 1992537 (E.D. New York 2010) is more on point.  It involved allegations that police violations of a minor's civil rights resulted in physical injuries and a four day incarceration.  In Baez, the court approved a $ 15,000 gross settlement.

///

///

Although the full extent of the minors' injuries and the underlying liability issues in <u>Map</u>, <u>Baez</u>, and *Hagen* are not known, these cases support this court's decision that a gross settlement of $280,000.00 (plus $7,500.00 to defray the costs of setting up and administering a special needs trust) for James Smith and a gross settlement of $20,000.00 for JA.S. are fair and reasonable. James Smith's $603.39 in medical expenses were less than those required to treat the minor in the <u>Map</u> case, yet his net settlement is more than the <u>Map</u> plaintiff recovered. JA.S. did not suffer any physical injuries and did not receive any medical care. Yet, she is recovering more than the <u>Baez</u> plaintiff recovered for his physical injuries and the four days he was incarcerated. James Smith's and JA.S.' settlements are also more than the <u>Hagen</u> plaintiff recovered for the loss of his father.

This Court hereby finds that the proposed settlements for James Smith and JA.S. are fair and reasonable.

B.   **PRESERVATION OF BENEFITS**

Both James Smith and JA.S. receive need-based benefits in the form of Supplemental Security Income ("SSI") and Medi-Cal. The Plaintiffs filed a separate petition to create a special needs trust for James Smith. The court's consideration of that petition is addressed in the order on that petition. In this petition, Plaintiffs have requested: 1) to use $7,500.00 of James Smith's net settlement money to help the family move, 2) to be allowed to place $1,750.00 if JA.S.' net settlement into a blocked account until she turns 18, and 3) allow JA.S. to "spend down" her net settlement proceeds so that she will still qualify for SSI and Medi-Cal, including spending $2,500.00 to help the family move.

Plaintiffs have submitted a declaration from Kevin Urbatsch, Esq., an attorney who specializes in assisting people with disabilities in their estate and settlement planning needs. Citing the Social Security Administration's "Program Operation Manual System," (POMS) and various sections from Title 20 of the Code of Federal Regulations, Mr. Urbatsch explains that a plaintiff's net settlement proceeds can be spent down on certain items and services. Based upon those representations, the Court finds good cause to allow JA.S.'s net settlement proceeds to be used in such a way as to preserve her eligibility for SSI and Medi-Cal benefits.

///

**CONCLUSION AND ORDER**

For the reasons discussed above, the Court ORDERS as follows:

1. The Court finds that the proposed settlement serves the best interests of the Plaintiffs. The Petition for Order Approving Compromise of Claims of Plaintiffs James Smith and JA.S. (ECF No. 10) is GRANTED.

2. Defendants are to pay the settlement proceeds either: (1) not later than May 10, 2016; or (2) if it is not possible to issue the proceeds before May 10, 2016, no earlier than June 1, 2016, and no later than June 3, 2016. Payment of the settlements within the first three days of the month is intended to allow JA.S. time to spend-down the money, as set forth below, within the month it is received.

3. $ 7,500.00 of James Smith's net settlement proceeds may be spent to help defray the costs of moving the family out of the neighborhood where they presently reside.

4. The remainder of James Smith's net settlement proceeds is to be distributed according to the Court's order on the petition to establish a special needs trust.

5. $ 1,750.00 of JA.S.' net settlement proceeds are to be deposited into a blocked account in a federally insured bank or credit union. This money may not be withdrawn by anyone, without a court order, or until JA.S. turns 18 years old. Once JA.S. turns 18 years old, she will be entitled to withdraw the money.

6. $ 2,500.00 of JA.S.' net settlement proceeds may be spent to help defray the costs of moving the family out of the neighborhood where they presently reside.

///
///
///
///
///
///
///
///

Order on Motion to Approve Settlement            6.

7. JA.S. is allowed to "spend down" the remainder of her net settlement proceeds, as permitted by the Social Security Administration, in order to preserve her eligibility for SSI and Medi-Cal benefits.

8. The Clerk of the Court is directed to close this action.

IT IS SO ORDERED.

Dated: May 5, 2016

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE

Order on Motion to Approve Settlement 7.